IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA RECEIVED
NORTHERN DIVISION

CATHERINE CARTER            )        2006 MAR 31  A 11: 09

Plaintiffs,                 )        TERRA P. HACKETT, CLK
                            )        U.S. DISTRICT COURT
                            )        MIDDLE DISTRICT ALA.
v.                          )        CASE NO. 2:06 CV 272-WKW
                            )
PAGE WALLEY, as Director,   )
Alabama Department of Human Resources, )
and MIKE JOHANS, Secretary, U.S. )
Department of Agriculture,  )
                            )
Defendants.                 )


## OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF BY DEFENDANT WALLEY

COMES NOW Defendant, Page Walley, in his official capacity as Commissioner

of the Alabama Department of Human Resources; (herein after "DHR"), by and through

his undersigned counsel, in opposition to Plaintiffs' motions for temporary restraining

order and for preliminary injunctive relief, and state unto this Court as follows:

1.    The requirements for temporary restraining order (TRO) are as follows

> To be entitled to a TRO, a movant must show: (1) a substantial
> likelihood of ultimate success on the merits; (2) the TRO is
> necessary to prevent irreparable injury; (3) the threatened injury
> outweights the harm the TRO would inflict on the non-movant; and
> (4) the TRO would serve the public interest. *Gresham Park
> Community Org. v. Howell,* 652 F.2d 1227, 1232 n. 7 (5th Cir.
> 1981).

*Ingram v. Ault,* 50 F.3d 898, 900 (11th Cir. 1995)

The prerequisites for preliminary injunctive relief are well known:

The prerequisites are: (1) that there is a substantial likelihood plaintiff will prevail on the merits; (2) that there is a substantial threat plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff outweighs the threatened harm to the defendant; *and* (4) that granting the preliminary injunction will not disserve the public interest. *See Warren Publishing, Inc., v. Microdos Data Corp.* 115 F.3d 1509, 1516 (11th Cir. 1997). We add that a preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites. *Canal Authority [of State of Florida v. Calloway]*, 489 F.2d [567] at 573 [(5th Cir. 1974)].

*Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166, (11th Cir. May 25, 2001) (emphasis in the original; parenthetical information added); *see also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998); *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983); *United States v. Jefferson County*, 720 F.2d 1511, 1520 (11th Cir. 1983). The purpose of such a preliminary injunction is "merely to preserve the relative positions of the parties until a trial of the merits can be held." *University of Texas v. Camenish*, 451 U.S. 390, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981).

Plaintiff Carter currently receives food stamp benefits as a member of her Mother's household. That is the status quo. Plaintiff's opposition after separate household status has been considered and requested by federal food stamp officials in Washington, D.C. See e-mail message attached. *Morton v. Ruiz*, 415 U.S. 199 (1974) (agency interpretation is entitled to deference when consistent with congressional purpose).

Plaintiff has failed to avail herself of state due process remedies prior to asserting her claim of a 14th Amendment Due Process violation. See Comp at paragraph 14. *McKinney v. Pate*, 20 F.3d, 1557 (11th Cir. 1994) ("only when the

2

state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under § 1983 arise.")

Plaintiff's Equal Protective claim has no merit because the food stamp classifications at issue are reasonable. The right of equal protection is not violated merely by classifications in a statute that are "imperfect." *Danbridge v. Williams,* 397 U.S. 471, 485 (1970). "A statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteeth Amendment if it is "rationally based and free from invidious discrimination." *Dandridge v. Williams,* 397 U.S at 487; *Weinberger v. Salfi,* 422 U.S. 749, 770 (1975).

2.    The low probability of success on the merits of a claim is a determinative factor in the Court's consideration of a motion for preliminary injunctive relief. Binding precedent for the United States Court of Appeals for the Fifth Circuit holds that:

> No matter how severe and irreparable an injury one seeking a preliminary injunction may suffer in its absence, the injunction should never issue if there is no chance that the movant will eventually prevail on the merits. Nor is there any need to weigh the relative hardships which a preliminary injunction of the lack of one might cause the parties unless the movant can show some likelihood of ultimate success.

*State of Texas v. Seatrain International, S.A.,* 518 F.2d 175, 180 (5th Cir. 1975). Plaintiffs' in this case has no likelihood of success on the merits of any of her alleged constitutional, statutory, or regulatory claims. Therefore, preliminary injunctive relief is unavailable, regardless of any alleged injury.

Plaintiff Carter seeks temporary, preliminary and permanent injunctive relief to "(d) eclare that the Americans with Disabilities Act and section 504 of the Rehabilitation Act

3

require defendants to afford [sic] plaintiff and all others whose disability prevents them from purchasing and preparing food themselves." Complaint at p 5. Plaintiff seeks the allege a Title II Americans with Disabilities Act (ADA) violation. "Title II of the ADA generally prohibits disability discrimination by a "public entity" in the administration of its services, programs, or activities." 42 USC § 12132" *Miller v King*, 384 F.3d. 1248, 1263 (11th Cir. 2004). The Eleventh Circuit Court of Appeals has stated the following is required to prevail on a ADA Title II claim:

> We now turn to what Miller must prove to obtain injunctive relief in his ADA claims. To prove a claim under Title II of the ADA, a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from the participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such entity; (3) by reason of such disability. *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (citing 42 U.S.C. § 12132).

*Miller v. King,* 384 F.3d at 1265. The requirements for a Rehab Act claim are identical:

> To state a claim under the Rehab. Act a plaintiff must demonstrate that (1) she is a qualified individual with a disability; (2) she was denied the benefits of a program or activity of a public entity which received federal funds; and (3) was discriminated against based on her disability. *See* 29 U.S.C. § 794(a). Similarly, to state a claim under Title II of the ADA, a plaintiff must demonstrated that: (1) she is qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability. *See Shotz v. Cates*, 256 F.3d1077, 1080 (11th Cir. 2001).

*Constantino v. Madden,* 2003 WL 22025477 (M.D. Fla 2003).

Conspicuously present is the requirement that Plaintiff Carter establish that she was denied public benefits because of her disability. Plaintiff Carter was denied for food stamps benefits as a separate household because she does not purchase and prepare food

separately. Plaintiff's Carter cerebral palsy condition was not the reason that food stamps benefits were denied.

Plaintiff Carter also seeks temporary, preliminary and permanent injunctive relief to "(e)njon defendant...from denying plaintiff the right to receive food stamps as a separate household" and a declaration "that the Food Stamp Act requires defendants to afford separate household status to plaintiff" Compl. at p.5. Plaintiff Carter has no likelihood of success on the merits because Food Stamp Act legislative history clearly supports the denial of benefits to plaintiff:

> Food stamps are provided on the basis of households, which are defined by reference to the purchasing and preparation of food. An individual, living alone or with others, can be considered a household if he or she typically buys and prepares his or her meals alone. Likewise, a group of related or unrelated people may be considered a household if they normally buy and prepare meals together. See id. [642 U.S.C.] §2012 (e) (1976); 7 C.F.R.§ 273.1 (a) (1980). Under these definitions it is possible for several households to share the same physical premises. Congress became concerned that this was a source of program abuse, particularly by related "households." For example, a person older than eighteen years old living with his parents but without his own income could, by buying an preparing meals separately, become eligible or the program, while he would be ineligible or eligible for lower benefits if he shared meals with his parents. See S. Rep. No. 139, 97th Cong., 1st Sess. 52-53, reprinted in 1981 U.S. Code Cong. & Ad.News 396, 442-43; 46 Fed.Reg. 44, 712, 44, 718 (1981) (preamble to interim rules). In order to prevent perceived abuses of this sort and thereby to cut program costs, the 1981 OBRA added to the definition of household the conclusive presumption that "parents and children who live together shall be treated as a group of individuals who customarily purchase and prepare meal together...even if they do not do so, unless one of the parents is sixty years of age or older. "OBRA § 101 (1), 7 U.S.C. § 2012(i) (Supp. V 1981) (current version at 7 U.S.C. § 2012 (i) (1982)).

*Levesque v. Block,* 723 F.2d 175, 172-178 (1st Cir. 1983).

Congress could reasonably determine that close relatives sharing a home—almost by definition—tend to purchase and prepare meals together while distant relatives and unrelated individuals might not be so inclined. In that event, even though close relatives are undoubtedly as honest as other food stamp recipients, the potential for mistaken or misstated claims of separate dining would be greater in the case of close relatives than would be true for those with weaker communal ties, simply because a greater percentage of the former category in fact prepare meals jointly than the comparable percentage in the latter category. The additional fact that close relatives represent by far the largest proportion of food stamp recipients might well have convinced Congress that limited funds would not permit the accommodation given distant relatives and unrelated persons to be stretched to embrace close relatives as well.

*Lynn v. Castillo*, 477 US. 635. 642 (1986)

"[A]n open-ended rule that allows most or all households to fragment simply by changing food purchasing and eating habits is too subject to manipulation." S.Rep. No. 97-504, p. 25 (1982), U.S. Code Cong. & Admin.News 1982, p. 1663.

*Lynn v. Castillo*, 477 U.S. at 643 footnote 10.

3.      Furthermore, the existence of "[h]arm alone is insufficient." *United States v. Lambert*, 695 F.2d at 540. The injury must be irreparable. A showing of irreparable injury is the "sin non qua of injunctive relief." *Northeastern Fla. Chapter of the Ass'n of General Contractors v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir. 1990). Plaintiff claims only that she will be denied food stamp benefits which she has never received. Such alleged injury is not irreparable. Any loss of benefits that Plaintiff suffers can be remedied. The federal food stamps Act provides that "any food stamps allotments found to have been wrongfully withheld shall be restored only for periods of not more than one year prior to the date of the commencement of such action." U.S.C. § 2023 (b). Plaintiff allege injury is therefore not irreparable.

With regard to the irreparable injury requirement, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir.1981).

> [L]ost income or other economic loss that is calculable and compensable by monetary damages ordinarily will not be considered an irreparable injury. Other alleged injuries that have been deemed not to be irreparable for preliminary injunction purposes are discharge from employment, litigation costs, and the cost of compliance with government regulation.

MOORE'S FEDERAL PRACTICE 3d, *Injunctions*, § 65.22(1)(b) (footnotes omitted); *see also American Hospital Association v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) (injury resulting from attempted compliance with government regulation is not irreparable harm). Significantly, even if Plaintiffs established a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper. *See Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 909 F.2d 480, 486 (11th Cir. 1990) (affirming denial of preliminary injunction even though plaintiff established likelihood of prevailing because plaintiff failed to meet burden of proving irreparable injury); *City of Jacksonville*, 896 F.2d at 1285 (reversing preliminary injunction based solely on plaintiff's failure to show irreparable injury); *Flowers Industries v. FTC*, 849 F.2d 551, 552 (11th Cir. 1988) (same); *United States v. Lambert*, 695 F.2d 536, 540 (11th Cir. 1983) (affirming denial of preliminary injunction and stating that a plaintiff's "success in establishing a likelihood it will prevail on the merits does not obviate the necessity to show irreparable harm"). The asserted irreparable injury "must be neither remote nor speculative, but actual and imminent." *City of Jacksonville*, 896 F.2d at 1285 (quoting *Tucker Anthony Realty Corp.*

*v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989)); *accord*, *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) ("An injunction is appropriate only of the anticipated injury is imminent and irreparable.").

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Defendants respectfully move this Court to:

(a)     deny Plaintiff's motion for temporary restraining order,

(b)     deny Plaintiffs' motion for preliminary injunctive relief; and

(c)     grant such other, further, and different relief as this Court may deem proper.


RESPECTFULLY SUBMITTED

James E. Long - LON016
Assistant Attorney General

State of Alabama
Department of Human Resources
P.O. Box 304000
Montgomery, Alabama 36130-4000
Phone: (334) 242-9330
Fax: (334) 242-0689

ATTORNEY FOR DEFENDANT
WALLEY

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I have served a copy of the foregoing

OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTIVE

RELIEF by Defendant Walley upon the following by placing a copy thereof,

addressed to him as indicated below, in U.S. Mail, first class postage prepaid, on

this the ___3/<u>st</u>___ day of March 2006.

Hon. Larry Gardella
Legal Services of Alabama
207 Montgomery Street Suite 1200
Montgomery, Alabama 36104
(334) 832-1427
ATTORNEY FOR PLAINTIFF

James E. Long - LON016
Assistant Attorney General

State of Alabama
Department of Human Resources
P. O. Box 304000
Montgomery, Alabama 36130-4000
Telephone: (334) 242-9330
Fax: (334) 242-0689

ATTORNEY FOR DEFENDANT WALLEY

**Davis, Jeanette    PERS DHR**

| | |
|---|---|
| **From:** | Nix, Beverly      PERS DHR |
| **ent:** | Wednesday, March 15, 2006 12:58 PM |
| **.b:** | Murphy, Bobbie      MONT DHR |
| **Cc:** | Food Stamp Policy Desk |
| **Subject:** | FW: Disabled under Age 60 as a Separate Household |

FYI.

-----Original Message-----

| | |
|---|---|
| **From:** | Shedd, Russell [SMTP:Russell.Shedd@fns.usda.gov] |
| **Sent:** | Tuesday, March 14, 2006 12:27 PM |
| **To:** | BNix@dhr.state.al.us |
| **Cc:** | Smith, Glenda; SE - Policy |
| **Subject:** | Disabled under Age 60 as a Separate Household |

We received a response from Headquarters on the policy question forwarded to them. As you can see, they concur with your decision not to grant separate household status to the client in question.

Subject: Disabled as a Separate Household - 273.1

Date:        March 14, 2006

Author:      Tim Shedd

Source:      Alabama

Q:  Legal Services Cooperation has contacted the county office on behalf of an applicant who was previously included in her mother's food stamp budget.  The 43 year-old daughter receives SSI and has been included in her mother's food stamp budget for about 10 years and currently participates through August 2006 with the mother.

The daughter filed an application separately from her mother on October 14, 2005.  They continue to live together and there is a son disqualified for non-compliance with work registration requirements. During the interview with the daughter in October, the eligibility worker observed that the daughter is handicapped, confined to a wheelchair and her hands are severely crippled.  The worker inquired as to whether she (the daughter) could purchase and prepare her food separately from her mother. The daughter responded that the mother would purchase and prepare meals for her as she currently does. The application was denied due to client's inability to purchase and prepare meals separately from other household members.  Based on the circumstances, did the county office process this application according to household composition policy (273.1)?

A: This question was referred to our Food Stamp Headquarters Policy staff.  As they read the Food Stamp Act, Congress provided an exception from the usual requirement for purchasing and preparing food only for

1

the elderly and disabled (Codified at 7 CFR 273.1(b)(2)). Interpreting
the law any other way would seem to expand the exception beyond what
Congress intended.



ATT00001.htm