IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CATHERINE CARTER, | ) |
|     Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 2:06-cv-272-WKW ) |
| PAGE WALLEY, as Director, Alabama Department of Human Resources, and MIKE JOHANNS, Secretary, U.S. Department of Agriculture, | ) ) ) ) ) |
|     Defendants. | ) ) |

**REPLY TO THE OBJECTION OF DEFENDANT WALLEY**

**I. INTRODUCTION**

The practices and policies of defendants Page Walley and Mike Johanns deny plaintiff Catherine Carter rights conferred upon her by the Food Stamp Act of 1964. Although Ms. Carter has her food purchased and prepared separately from her mother's, defendants are denying her the opportunity to participate as a separate household and, thereby, keeping her from receiving enough food stamps. Their sole reason is that Ms. Carter's debilitating cerebral palsy prevents her from using her hands to purchase food or prepare meals.

Defendants' practices and policies violate the Food Stamp Act. They also violate the Americans with Disabilities Act, Section 504 of the Rehabilitation Act and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution as applied to defendant Walley and the Due Process Clause of the Fifth Amendment as applied to defendant Johanns. Ms. Carter requests permanent injunctive relief and, due to the harm defendants are causing her, she further seeks preliminary and temporary injunctive relief.

Defendant Walley has filed an objection claiming Ms. Carter has no chance of prevailing, and that she is not entitled to a mandatory injunction. Ms. Carter refutes his arguments in this reply and demonstrates that this Court should grant her a temporary restraining order allowing her to receive food stamp benefits as a separate household pending a hearing on her motion for preliminary relief.

## II. SUMMARY OF FACTS

Catherine Carter is a U.S. citizen and a resident of Montgomery, Alabama. She is 43 years old. She has a significant impairment, cerebral palsy, which substantially limits several of her major life activities, including but not limited to, caring for herself, performing manual tasks and working. The Social Security Administration has determined that Ms. Carter is disabled by her cerebral palsy. She receives a monthly SSI check of $603, which is her entire income. Ms. Carter lives with her mother, so that her mother can provide her with care and personal services she needs. Ms. Carter's mother purchases food for Ms. Carter and prepares meals for her. She purchases separate food for Ms. Carter and prepares her different and separate meals. Ms. Carter is 62 years old and also receives SSI.

As a single food stamp household, Ms. Carter and her mother receive food stamp benefits of less than $10 per month. Ms. Carter often has to go to the Food Bank for food, because her income and food stamps are insufficient to purchase the food she needs. She falls behind on bills. If Ms. Carter could participate as a separate household, she would receive approximately $60 more in food stamp benefits per month. That represents approximately ten per cent of her income, enough to keep her from having to rely on churches and the Food Bank and to keep her from falling behind on other bills.

Ms. Carter asked the Montgomery County Food Stamp Office to allow her to receive food stamps as a separate household. Although Ms. Carter's mother purchases and prepares her daughter's meals separately, defendant Walley's agents at that office said she could not, "because disabled individuals must have the ability to purchase and prepare their meals separately from others in the household in order to be given separate household status." (November 1, 2005, notice from Montgomery County Food Stamp Office to Ms. Carter, which is attached to her supplemental affidavit.) By their agents, defendants Walley and Johanns have upheld this decision after an informal review process, which forces Ms. Carter to get food from the Food Bank and try to get by on a much lower amount of food stamp benefits than the amount to which she would be entitled as a separate household.

### III. ARGUMENT

Defendant Walley properly sets out the four factors for issuance of a preliminary injunction or temporary restraining order. Ms. Carter objects only to his analysis of her claims.

**A. This Court Should Grant a Mandatory Injunction as Temporary Relief**

Defendant Walley argues that the purpose of a temporary or preliminary injunction is to preserve the status quo, *citing University of Texas v. Camenish,* 451 U.S. 390 (1981). While this is generally true, where failing to act would cause irreparable harm, a court should issue a mandatory injunction. *See, e.g., Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555, 1557 (11th Cir. 1989) (affirming a preliminary injunction requiring officials to provide translators and change the procedures they had followed on hearings in certain immigration cases); *Ferry-Morse Seed Co. v. Food Corn, Inc.,* 729

3

F.2d 589, 593 (8th Cir. 1984) (in a commercial case where one company ceased supplying another with seed corn, "mandatory relief could properly be found to be necessary to prevent irreparable harm").  When, as here, agencies are causing a person to do without adequate food assistance, a mandatory injunction is especially appropriate. *See e.g., Haskins v. Stanton*, 794 F.2d 1273, 1276-1277 (8th Cir. 1994) ("We agree with the trial judge that the deprivation of food "is extremely serious and is quite likely to impose lingering, if not irreversible, hardships upon recipients."")  Similarly, when, as here, agencies are violating a recipient's rights under statutes such as the Americans with Disabilities Act, a court also has ample basis for granting a mandatory injunction.  *See, e.g., Wyatt by & Through Rawlins v. Poundstone*, 892 F. Supp. 1410, 1412 (M.D. Ala. 1995), appeal dismissed as moot, *Wyatt v. Fetner*, 92 F.3d 1074 (11th Cir. 1996), where the court granted a motion based on the Americans Disability Act and a prior consent decree and directed the Alabama Department of Mental Health to take the steps needed to protect patients at a mental health facility in Eufaula from abuse and to give them meaningful individual treatment.  "[B]ecause, as is shown below, violations of the Wyatt standards at the Center are pervasive and severe and because, as a result, the very health and safety of the children at the Center are threatened, some form of preliminary or interim relief is warranted." *Wyatt*, 892 F. Supp. at 1412.  Moreover, discrimination is irreparable injury per se and justifies issuance of a preliminary injunction to require changes to the status quo.  *Cf. Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984) ("We agree with the district court that irreparable injury may be presumed from the fact of [race] discrimination.")

4

### B. Catherine Carter Is Very Likely to Prevail on the Merits

1. The Food Stamp Act Allows Someone to Buy Food and Prepare Meals through an Agent

Defendant Walley appends a statement from defendant Johanns's agents that claims that "Congress provided an exception from the usual requirement for purchasing and preparing food only for the elderly and disabled . . . Interpreting the [Food Stamp Act] in any other way would seem to expand the exception beyond what Congress intended."  The statutory definition of a food stamp household does not support defendants' interpretation.

Title 7 U.S.C. §2012(i)(A) provides that a food stamp household can be "an individual who lives alone or who, while living with others, customarily purchases food and prepares meals for home consumption separate and apart from the others." It also provides an exception from the separate purchasing and preparation requirement allowing an "individual who lives with others, who is sixty years of age or older, and who is unable to purchase food and prepare meals because such individual suffers, as certified by a licensed physician, from a disability which would be considered a permanent disability under section 221(i) of the Social Security Act (42 U.S.C. 421(i)) or from a severe, permanent, and disabling physical or mental infirmity which is not symptomatic of a disease" to be an "individual household, without regard to the purchase of food and preparation of meals," if her income does not exceed the poverty level by more than 65 per centum." 7 U.S.C. §2012(i)(3).

Defendant Johanns's interpretation suggests that Ms. Carter is seeking to expand that exception for people who can get food stamps even though their food is not purchased and prepared separately.  She is not. Ms. Carter's food is purchased and

5

prepared separately. What she is asking defendants to do is to treat her and her mother as separate households because her food is purchased and prepared separately, but is purchased and prepared by someone other than herself. In this case, that person happens to be her mother.

Defendants apparently read "purchases food and prepares meals for home consumption separate and apart" as requiring someone to do the physical food buying and preparation herself. Someone unfamiliar with the history of the Food Stamp Act and with its implementing regulations might read it that way. However, such a reading is inconsistent with the Act's purposes and with the entirety of the legislation. Most directly, that reading is inconsistent with defendant Johanns's regulations allowing authorized representatives, such as Ms. Carter's mother, to purchase food and perform other functions required in order to participate in the program for persons for whom performing those acts would be impossible – or even merely inconvenient.

An agency's policy statement is entitled to less deference than a rule promulgated pursuant to that agency's legislative authority. *Christensen v. Harris County*, 529 U.S. 576, 587 (U.S. 2000) (Court rejects the interpretation of the "Interpretations such as those in opinion letters -- like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law -- do not warrant Chevron-style deference. . . .  we find unpersuasive the agency's interpretation of the statute at issue in this case.); *Batterton v. Francis*, 432 U.S. 416, 424-26 (1977); *Levesque v. Block*, 723 F.2d 175, 179 (1st Cir. 1983); *Nason v. Kennebec County CETA*, 646 F.2d 10, 18 (1st Cir. 1981). This is particularly true where, as here, the statute requires defendant Johanns to govern the Food Stamp Program through uniform national standards

promulgated through notice-and-comment rule-making, 7 U.S.C. §§2013, 2014(b), which this policy statement was not.  When, as here, a policy statement is inconsistent with the statutory framework, it is entitled to no deference.

Defendant Walley cites several cases that he asserts demonstrate that "Food Stamp Act legislative history clearly supports the denial of benefits to plaintiff."  His reading of the legislative history is grossly mistaken.  Defendant Walley notes that in *Lyng v. Castillo*, 477 U.S. 635 (1986), and *Levesque v. Block*, 723 F.2d 175 (1st Cir. 1983), the Supreme Court and the First Circuit discussed an amendment that limited the ability of close relatives living together to be separate households."  477 U.S. at 642.  Defendant Walley fails to note, however, that even under that amendment, an adult and the adult's parent could be separate households if the adult's parent was 60 years old of older, *Levesque v. Block*, 723 F.2d at 178, and that Ms. Carter's mother is over the age of 60.  In other words, at the time of the amendment, Congress was not interested in preventing people such as Ms. Carter and her mother from being separate food stamp households; it was interested in preventing younger parents living with adult children from being separate food stamp households.  Moreover, Congress removed this limitation from the Food Stamp Act thirteen years ago.  103 P.L. 66, 13931.  Therefore, *Lynn* and *Levesque* do not provide any support for the proposition defendant Walley espouses.  On the contrary, they show that for the past thirteen years, the Food Stamp Act has reflected congressional desire to allow family members living together to form separate food stamp households.

An examination of the language of the Food Stamp Act as a whole shows that it is inconsistent with defendant Walley's position.  Despite the lack of any express statutory

7

authorization, it is incontrovertible that the "purchases food" requirement can be met by an agent. Title 7 U.S.C. §2016(i)(9) implicitly recognizes this, since it provides that a "State agency shall establish procedures to ensure that any other appropriate member of the household or any authorized representative of the household may utilize the card." Defendant Johanns explicitly recognizes that agents can use food stamp benefits for recipients, saying "*Authorized representatives.* Representatives may be authorized to act on behalf of a household in the application process, in obtaining food stamp benefits, and in using food stamp benefits," 7 C.F.R. §273.2(n), and "[u]pon request, the household or the authorized representative, shall present the household's ID card at issuance points, retail food stores or meal services in order to transact the allotment authorization or when exchanging benefits for eligible food." 7 C.F.R. §274.10. Similarly, defendant Walley, through the Alabama Department of Human Resources website explains "[t]he head of household, spouse, or other responsible household member may designate an authorized representative to act on behalf of the household. This person may apply for benefits, obtain the benefits and/or use the benefits for the food stamp household." http://www.dhr.state.al.us/page.asp?pageid=160  Thus, the authorization to use an agent (an "authorized representative") thus must be read into the language of 7 U.S.C. §2012(A), as well as into any other language that might suggest that only a food stamp recipient could use his or her food stamp benefits to purchase food. *See, e.g.*, 7 U.S.C. §2016(b) (emphasis added) ("Coupons issued to eligible households shall be used by them only to purchase food in retail food stores which have been approved for participation in the food stamp program at prices prevailing in such stores.")

Congress does not expressly state that a household can have the meal preparation

requirement satisfied by an agent. Nevertheless, the number of instances in the Food Stamp Act, and the regulations implementing it, where someone can be a food stamp household without preparing any meals at all demonstrates that the ability to prepare meals, like the ability to purchase food, is not critical for being a food stamp household.

In at least seven different regulatory provisions, defendant Johanns expressly authorizes food stamp recipients to purchase food prepared by others:

"Eligible household members 60 years of age or over or members who are housebound, physically handicapped, or otherwise disabled to the extent that they are unable to adequately prepare all their meals, and their spouses, may use coupons to purchase meals prepared for and delivered to them by a nonprofit meal delivery service authorized by FNS." 7 C.F.R. §274.10(a)(4)(i).

"Eligible household members 60 years of age or over and their spouses, or those receiving SSI and their spouses, may use coupons issued to them to purchase meals prepared especially for them at communal dining facilities authorized by FNS for that purpose." 7 C.F.R. §274.10(a)(4)(ii).

"Eligible homeless households may use food stamp benefits to purchase meals from restaurants authorized by FNS for such purpose." 7 C.F.R. §274.10(a)(4)(iii)

"*Meals-on-wheels.* Eligible household members 60 years of age or over or members who are housebound, physically handicapped, or otherwise disabled to the extent that they are unable to adequately prepare all their meals, and their spouses, may use coupons to purchase meals prepared for and delivered to them by a nonprofit meal delivery service authorized by FNS." 7 C.F.R. §274.10(e).

"Members of eligible households who are narcotics addicts or alcoholics and who regularly participate in a drug or alcoholic treatment rehabilitation program may use food stamp benefits to purchase food prepared for them during the course of such program by a private nonprofit organization or institution or publicly operated community mental health center which is authorized by FNS to redeem benefits in accordance with §278.1 and §278.2(g) of this chapter." 7 C.F.R. §274.10(f)(1).

"Eligible residents of a group living arrangement may use food stamp benefits issued to them to purchase meals prepared especially for them at a group living arrangement which is authorized by FNS to redeem benefits in accordance with §278.1 and §278.2(g) of this chapter." 7 C.F.R. §274.10(f)(2)

"Residents of shelters for battered women and children as defined in §278.1(g) of this chapter may use their food stamp benefits to purchase meals prepared especially for them at a shelter which is authorized by FNS to redeem benefits in accordance with §278.1 and §278.2(g) of this chapter." 7 C.F.R. §274.10(f)(3)

"*Homeless food stamp households.* Homeless food stamp households may use their food stamp benefits to purchase prepared meals from authorized homeless meal providers." 7 C.F.R. §274.10(e).

Since Congress in many instances authorizes people to receive food stamp benefits as separate households when they use them to purchase and eat meals that someone else has prepared, there is no reason to believe that Congress intended to prohibit someone from being a food stamp household if she had her meals prepared by someone else acting as her agent.

Ms. Carter's mother serves as her agent or authorized representative both for the purchase of food and the preparation of her separate and different meals. For that reason, Ms. Carter satisfies the statutory requirement to receive food stamps as a separate household.

2. The Americans with Disabilities Act and Section 504 of the Rehabilitation Act Require Defendants to Accommodate Ms. Carter by Allowing Her to Have an Agent Prepare Her Meals

Since meal preparation is not critical to being a food stamp household, as Ms. Carter has explained above, 7 U.S.C. §2012 should be interpreted as allowing someone to have an agent prepare meals. However, even if the Food Stamp Act could be otherwise interpreted, defendants interpretation would violate the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, which prohibit the Food Stamp program from using rules or methods of program administration that have a discriminatory effect on people with disabilities; 29 U.S.C. § 794; 42 U.S.C. §12132; 7 C.F.R. ¶15b.4; 28 C.F.R. §§35.130(b)(1) and (b)(3). Defendants' denial of separate household status to individuals whose food is purchased and prepared separately by a relative residing with the recipient is a "facially neutral" policy that has a discriminatory effect on people with disabilities such as the plaintiff, who are unable to shop and prepare food on their own who receive help from a relative residing with them. *See, e.g., Crowder v. Kitigawa*, 81 F.3d 1480 (dog quarantine regulation has a discriminatory effect on people with visual impairments who use guide dogs); *Washington v. Indiana High Sch. Activs. Assoc'n*, 181 F.3d 840 (7th Cir. 1999) (rule limiting student participation in interschool athletics to the eight semesters following entry into ninth grade had a discriminatory impact on students with disabilities who took time off of school for reasons related to their disabilities); *Johnson*

*v. Florida High Sch. Activs. Assoc'n*, 899 F. Supp. 599 (M.D. Fla. 1995), *vac. as moot*, 109 F.3d 1172 (11th Cir. 1997) (excluding students age 19 and older from interschool sports had discriminatory impact of students with disabilities who were in school at a later age because of their disabilities); *Galusha v. New York State Dep't of Environm'l Conservation*, 27 F. Supp.2d 117 (N.D.N.Y. 1998) (rule prohibiting motorized vehicles in state parks denied meaningful access to people with disabilities). When policies and practices have a discriminatory effect on people with disabilities, reasonable accommodations must be provided to avoid discrimination. *Olmstead v. Zimring*, 527 U.S. 521, 603 (1999); *Alexander v. Choate*, 486 U.S. 287, 301 (1985); 28 C.F.R. § 35.130(b)(7). *Johnson v. Florida High Sch. Activs. Assoc'n*, 899 F. Supp. at 585; *Cf., P.G.A. Tour v. Martin*, 532 U.S. 661 (2001) (professional golf tournament must modify rules to accommodate an individual with a mobility impairment). Thus, even if defendants' interpretation of the law was correct, defendants would be required to modify the meal preparation requirement as a reasonable accommodation to Ms. Carter.

Defendant Walley attempts to address this issue by arguing that the basis for the denial of separate household status was not Ms. Carter's cerebral palsy, but rather her failure to purchase and prepare food herself. He neglects to note that his denial notice said Ms. Carter could not receive food stamps as a separate household, because "disabled individuals must have the ability to purchase and prepare their meals . . ." Moreover, defendant Walley's argument assumes that the only type of discrimination prohibited by the ADA and Section 504 is disparate treatment of the basis of disability. As noted above, the ADA and Section 504 prohibit discrimination on the basis of disability caused by the disparate effect of a neutral policy. It is because Ms. Carter has a disability that

she us unable to shop and prepare meals for herself, and has her mother perform these tasks for her. Defendants' interpretation of the Food Stamp Act plainly discriminates against Ms. Carter on the basis of disability, whether or not the denial notice gave her disability as the reason for denying her request to be treated as a separate household.

> 3. Interpreting the Food Stamp Act to Deny Ms. Carter the Right to Be a Separate Food Stamp Household Would Violate the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment

Ms. Carter has not raised any Due Process claim against defendant Walley, so his arguments about due process remedies and *McKinney v. Pate*, 20 F. 3d 1557 (11th Cir. 1994), are inapplicable. She references the Due Process Clause of the Fifth Amendment only because it imposes on defendant Johanns requirements in the nature of Equal Protection. *United States Dep't of Agric. v. Moreno*, 413 U.S. 528 (U.S. 1973).

Ms. Carter is not seeking to strike down any statute because of the Equal Protection Clause to the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment. Instead, she maintains that the language in the Food Stamp Act must be interpreted in a manner consistent with the Equal Protection Clause. Defendant Walley dismisses Ms. Carter's Equal Protection arguments as without merit by asserting, without explanation, that the food stamp classifications at issue are reasonable. However, classifications relating to household status have been found to violate the Equal Protection guarantees inherent in the Due Process Clause of the Fifth Amendment. In *United States Dep't of Agric. v. Moreno*, 413 U.S. 528, 534-535 (1973)**,** the Supreme Court held that the goals of the Food Stamp Act were not advanced by a federal statute that barred unrelated people from being a single household, nor was there any rational basis for the statute. "[f]or if the constitutional conception of "equal protection of the

13

laws" means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Id.* at 534. *See also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447 (1985) (relying on the Equal Protection Clause to strike down an ordinance burdening a group of people with disabilities who were also "politically unpopular").

One of the cases defendant Walley tried to use in support of his view of legislative history, *Lyng v. Castillo*, 477 U.S. 635 (1986)), denied an Equal Protection challenge to former provisions of the Food Stamp Act relating to who could be separate households. The Supreme Court said that "Congress could accommodate the wishes of distant relatives and unrelated individuals to dine separately without invidiously discriminating against close relatives," because the unrelated people were "most likely to actually be separate households, although living together with others for reasons of economy or health." 477 U.S. at 641-642.[1]  Ms. Carter lives with her mother for reasons of both economy and health. She and others not capable of cooking are not likely to make fraudulent or mistaken claims of separate household status.

To evaluate whether defendants' interpretation of the Food Stamp Act is consistent with Equal Protection, it is necessary to examine the classifications that purportedly justify different treatment. Ms. Carter challenges defendants' distinction between two groups of people living together but having food purchased and meals prepared separately. One group consists of people who all have the physical capacity to purchase and prepare meals themselves. The second group, which includes Ms. Carter, includes one or more people under 60 years of age who lack the physical capacity to

---

[1] Congress also allowed a parent over 60 living with an adult child to be a separate household. See pp. 6, *supra*.

14

purchase and prepare meals themselves. There is no rational basis for granting members of the first group the right to receive food stamps as separate households, but to deny that right to Ms. Carter and members of the second group. The reason for giving separate food stamp allotments to people purchasing and preparing food separately is that the food is that the people are separate eating units. It is not in any way related to anyone's physical capacity for the purchase of food or the preparation of meals.

### C. Catherine Carter Will Suffer Irreparable Harm if Temporary Relief Is Denied

Defendant Walley's final point is that temporary injunctive relief can only be given when injuries are irreparable. While it is true that section 2023 in the Food Stamp Act provides for restoration of lost food stamps, that does not mean that the harm Ms. Carter is suffering is not irreparable. As noted earlier, in *Haskins v. Stanton*, 794 F.2d 1273, 1276-1277 (8th Cir. 1994), the court found the deprivation of food resulting when people could not get food stamps to which they were entitled "is extremely serious and is quite likely to impose lingering, if not irreversible, hardships upon recipients." Ms. Carter is sharing approximately ten dollars worth of food stamp benefits, instead of receiving more than sixty dollars of benefits for herself, a substantial loss of food purchasing ability. In addition, she is suffering from discrimination based on her disability, which cannot be redressed by later post-judgment relief. *See, e.g., Wyatt by & Through Rawlins v. Poundstone*, 892 F. Supp. 1410, 1412 (M.D. Ala. 1995), *appeal dism. as moot*, *Wyatt v. Fetner*, 92 F.3d 1074 (11th Cir. 1996); *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984).

### D. Defendants Will Not Suffer Considerable Harm if Temporary Relief Is Granted

Granting Ms. Carter separate household status will cost defendants approximately sixty dollars per month. Defendant Walley has not argued that the cost is considerable, and it is not.

### E. The Public Interest Is Served by a Grant of Temporary Relief

Defendant Walley has not argued that the public interest would be disserved by issuance of a temporary restraining order. For two reasons, it would not. First, the public interest is served by addressing the needs of the poor and disabled. "Our society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges." *Lopez v. Heckler*, 713 F.2d 1432, 1437-1438 (9th Cir. 1983) (also noting "It would be unfortunate, but far less harmful to society, were the government to succeed in overturning the preliminary injunction but be unable to recoup all or a portion of the funds."); *Thomas v. Heckler*, 598 F. Supp. 492, 497 (M.D. Ala. 1984).

Second, "there is a significant public interest in eliminating discrimination against individuals with disabilities." *Thomas by & Through Thomas v. Davidson Academy*, 846 F. Supp. 611, 620 (M.D. Tenn. 1994).

## IV. CONCLUSION

For the reasons set forth in this memorandum, this Court should reconsider its denial of Ms. Carter's motion for a temporary restraining order and enter an order temporarily restraining defendants from allowing Ms. Carter to receive food stamps as a separate household.

Respectfully submitted,

__/s/ Lawrence F. Gardella__
LAWRENCE F. GARDELLA  GAR028
Legal Services Alabama
207 Montgomery Street, Suite 1200
Montgomery, AL  36104
(334)  832-1427
Fax: (334) 264-1474
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this day, April 10, 2006, I have served the above and foregoing reply upon defendants by placing copies of same in the U.S. Mail, postage prepaid, properly addressed as follows:

Page Walley, Commissioner
Alabama Dep't of Human Resources
50 N. Ripley Street
Montgomery, AL 36130

Mike Johanns, Secretary
U.S. Dep't of Agriculture
1400 Independence Ave., SW
Washington, DC 20250

James E. Long, Legal Office
Alabama Dep't of Human Resources
50 N. Ripley Street
Montgomery, AL 36130

Alberto R. Gonzales, Attorney General
U.S. Dep't of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

Leura Garrett Canary, US Attorney
One Court Square, Suite 201
Montgomery, AL 36104

/s/ Lawrence F. Gardella_____
LAWRENCE F. GARDELLA