IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CATHERINE CARTER, | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.  2:06-cv-272- WKW |
| | ) |
| PAGE WALLEY, as Director, Alabama | ) |
| Department of Human Resources, and | ) DECLARATORY AND INJUNCTIVE |
| MIKE JOHANNS, Secretary, U.S. Department | ) RELIEF REQUESTED |
| of Agriculture, | ) |
| | ) |
|    Defendants. | ) |

**FIRST AMENDED COMPLAINT**

**INTRODUCTION**

    1. Plaintiff Catherine Carter is a 43-year-old woman who lives with her mother in Montgomery, Alabama.  She receives a monthly SSI check for $603, because the Social Security Administration found that she is disabled by the cerebral palsy from which she has suffered since birth.  Between them, Ms. Carter and her mother have a total cash income of $1206 a month, and they also receive approximately ten dollars monthly in food stamp benefits.

    Ms. Carter's cerebral palsy so affects her hands that she is unable to buy her own food in a grocery store or prepare her own meals.  Her mother buys separate food for Ms. Carter and prepares for her separate and different meals.  Ms. Carter's food is both purchased and prepared separately from that of her mother.

    Because of an incorrect and illegal reading of the Food Stamp Act and its implementing regulations, defendants Mike Johanns and Page Walley rejected Ms. Carter's application to be a separate household saying "disabled individuals must have the ability to purchase and prepare their meals separately from others in the household [sic] in order to be given separate household

status." Defendants are refusing to allow plaintiff Catherine Carter to receive food stamps as a separate household from her mother, solely because her cerebral palsy so limits her that she can neither purchase food nor prepare meals herself. They are requiring that Ms. Carter and her mother be a single food stamp household.

But for defendants' incorrect and illegal interpretation, Ms. Carter would as a separate food stamp household receive approximately $60 monthly in additional food stamp benefits. This would represent an increase of almost ten percent of her small monthly income, which would keep her from having to turn to charity at the Montgomery Food Bank just to get enough food to eat.

Ms. Carter brings this action to enforce her rights under the Food Stamp Act. At the same time, she challenges defendants' policies and practices as violative of the Americans with Disabilities Act, section 504 of the Rehabilitation Act, the Equal Protection Clause of the Fourteenth Amendment and the equal protection principles inherent in the Due Process Clause of the Fifth Amendment.

## JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343(3).

3. Declaratory and injunctive relief are authorized under 28 U.S.C. §§2201 *et seq.*

## PARTIES

4. Plaintiff Catherine Carter is a U.S. citizen and a resident of Montgomery, Alabama who is over the age of nineteen. She has cerebral palsy, which substantially limits major life activities, including walking, engaging in manual tasks, and working.

She is a "individual with handicaps" and "handicapped person" as those terms are defined in Section 504 of the Rehabilitation Act and implementing regulations, 29 U.S.C. §705(20)(B) and 7

C.F.R. §15b.3(i) and an "individual with a disability" as that term is defined under the Americans with Disabilities Act and implementing regulations, 42 U.S.C. §12102 and 28 C.F.R. §35.104.

She meets the essential eligibility requirements for receipt of Food Stamps under the Food Stamp program, and is a "qualified individual with a disability" and a "qualified handicapped person" as those terms are defined in Section 504 of the Rehabilitation Act implementing regulations, 7 C.F.R. §15b.3(n)(4) and a "qualified individual with a disability" as that term is defined under the Americans with Disabilities Act and implementing regulations, 42 U.S.C. §12102 and 28 C.F.R. §35.104.

5. Defendant Mike Johanns is Secretary of the U.S. Department of Agriculture and as such is responsible for overseeing the operation and administration of the food stamp program in all the states and ensuring that the program is administered in a matter consistent with federal law. His agents reviewed and approved the decision of defendant Walley's agents.

6. Defendant Page Walley is Director of the Alabama Department of Human Resources and as such is responsible for the operation and administration of the food stamp program in Alabama. His agents made the decision denying Ms. Carter's request.

## STATUTORY AND REGULATORY SCHEME

### FOOD STAMP PROGRAM

7. 7 U.S.C. §2012(i)(A) defines a food stamp household. In relevant part, it states that a household includes "(A) an individual who lives alone or who, while living with others, customarily purchases food and prepares meals for home consumption separate and apart from the others."

The statute also provides an exception from the separate purchasing and preparation requirement allowing an "individual who lives with others, who is sixty years of age or older, and who is unable to purchase food and prepare meals because such individual suffers, as certified by a

licensed physician, from a disability which would be considered a permanent disability under section 221(i) of the Social Security Act (42 U.S.C. 421(i)) or from a severe, permanent, and disabling physical or mental infirmity which is not symptomatic of a disease" to be an "individual household, without regard to the purchase of food and preparation of meals," if her income does not exceed the poverty level by more than 65 per centum.

8. 7 C.F.R. §273.1(a)(2) authorizes separate food stamp household status to "An individual living with others, but customarily purchasing food and preparing meals for home consumption separate and apart from others." 7 C.F.R. §273.1(b)(2) provides an exception from the separation requirement for "an otherwise eligible member of a household who is 60 years of age or older and is unable to purchase and prepare meals because he or she suffers from a disability considered permanent under the Social Security Act or a non disease-related, severe, permanent disability."

### SECTION 504 OF THE REHABILITATION ACT

9. Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), provides that "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency."

10. Regulations promulgated by defendant Johanns recognize his duty to "implement section 504 of the Rehabilitation Act of 1973, as amended, to the end that no otherwise qualified handicapped individual in the United States shall solely by reason of his or her handicap be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 7 C.F.R. §15b.1. The regulations implementing section 504 provide as follows:

      a. 7 C.F.R. §15b.2 subjects "all programs or activities that receive Federal financial assistance extended by the Department of Agriculture" to the regulations implementing section 504.

      b. 7 C.F.R. §15b.3(f) subjects "any State or its political subdivision, any instrumentality of a State or its political subdivision," including Alabama and defendant Walley's department

      c. 7 C.F.R. §15b.3(i) defines a "handicapped person" as including "any person who has a physical or mental impairment which substantially limits one or more major life activities . . ."

      d. 7 C.F.R. §15b.3(j) defines "Physical or mental impairment" as including "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine" and specifically notes that the term "includes, but is not limited to, such diseases and conditions as . . . cerebral palsy."

      e. 7 C.F.R. §15b.3(k) defines "Major life activities" as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."

      f. 7 C.F.R. §15b.3(n)(4) defines "Qualified handicapped person" or "otherwise qualified handicapped individual" as including : "a handicapped person who meets the essential eligibility requirements for the receipt of such services."

**5**

g. 7 C.F.R. §15b.4(a) contains a prohibition stating that no "qualified handicapped person . . . , on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity receiving assistance from this Department."

h. 7 C.F.R. §15b.4(b)(1) prohibits defendant Walley and other recipients from any and all of the following practices:

(1) "Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or services that is not equal to that afforded others;"

(2) "Provide a qualified handicapped person with an aid, benefit or service that is not as effective in affording equal opportunity to obtain the same result;"

(3) "Provide a different or separate aid, benefit or service to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with an aid, benefit or service that are as effective as those provided to others;"

(4) "Otherwise limit a qualified handicapped person in the enjoyment of any rights, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit or service."

i. The "aids, benefits and services" defendant Johanns provides "must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 7 C.F.R. §15b.4(b)(2).

**6**

j.  "A recipient may not . . . utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, [or] (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons." 7 C.F.R. §15b.4(b)(4).

**<u>AMERICANS WITH DISABILITIES ACT</u>**

11. The Americans with Disabilities Act at 42 USC §12101 contains findings that:

(a)(3)"discrimination against individuals with disabilities persists in such critical areas as . . . access to public services;

\* \* \*

(a)(5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, . . . failure to make modifications to existing . . . practices, exclusionary qualification standards and criteria, . . .;

(a)(6) census data, national polls, and other studies have documented that people with disabilities, as a group, . . . are severely disadvantaged socially, vocationally, economically, and educationally;

12. Section 12101(b) declares the purpose of the Americans with Disabilities Act is:

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing

>discrimination against individuals with disabilities;
>
>(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
>(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

13. The Americans with Disabilities Act at 42 U.S.C. 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

14. The U.S. Department of Justice promulgated 28 C.F.R. Part 38 to implement the Americans with Disabilities Act. 28 C.F.R. §38.103(a) provides that Part 3 "shall not be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 (29 U.S.C. 791) or the regulations issued by Federal agencies pursuant to that title, and 28 C.F.R. §38.103(b) provides that this Part "does not invalidate or limit the remedies, rights, and procedures of any other Federal laws, or State or local laws (including State common law) that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them."

15. 28 C.F.R. § 35.130 lists general prohibitions against discrimination that include:

>(a) No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public

entity.

(b)(1) A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability—

>   (i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;
>
>   (ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;
>
>   (iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;
>
>   (iv) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others;
>
>                           *   *   *
>
>   (vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.

  (3) A public entity may not . . . utilize criteria or methods of administration:

**9**

(i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability;

\* \* \*

(7) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

(8) A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.

(g) A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

## ALABAMA ADMINISTRATIVE CODE

16.  Section 660-1-1-.05 of the Alabama Administrative Code similarly constrains defendant Walley by providing that "The Department of Human Resources shall ensure, to the greatest extent possible, that all eligible persons are provided needed services, financial aid and other benefits, . . . without regard . . . handicapping conditions in compliance with State and Federal laws pertaining thereto."

**10**

## FACTS

17. Ms. Carter lives with her mother, so that her mother can provide her with care and personal services she needs. Ms. Carter and her mother receive food stamps as a single household. The amount of food stamps that they receive is minimal.

18. Ms. Carter's cerebral palsy substantially limits one or more major life activities, including but not limited to caring for herself, performing manual tasks and working. Ms. Carter is a qualified individual with a disability, because she is qualified for the food stamp program, and because her food is purchased and her meals are prepared separately from her mother's food and meals.

19. Ms. Carter asked the Montgomery County Food Stamp Office to allow her to receive food stamps as a separate household. Although Ms. Carter's food is purchased and prepared separately, the office said she could not, because a disability prevents her from purchasing and preparing the food herself. By their agents, defendants Walley and Johanns have upheld this decision, which forces Ms. Carter to live on a lower amount of food stamp benefits than the amount to which she would be entitled as a separate household.

20. Under the federal food stamp statute and regulations, if Ms. Carter were more than 60 years old, she could receive food stamps as an individual household even if her mother did not purchase Ms. Carter's food and prepare her meals separately. Since she is less than 60 years old, Ms. Carter can only qualify for food stamps as a separate household if her food is purchased and her meals prepared separately. Since they are, she does not need to look to any exception as a basis for eligibility as a separate household. Because she, through her mother as her agent, buys and prepares her food separately, she is eligible to be a separate household pursuant to the language of 7 U.S.C. § 2012(i)(A) and 7 C.F.R. § 2712(b)(1).

## **CLAIMS**

21. By interpreting the Food Stamp Act as denying separate household status to Ms. Carter solely because an impairment prevents her from shopping and cooking, defendants are using criteria of administration to deny the benefit of separate household status because of an impairment and to subject a qualified person to discrimination in violation of section 504 of the Rehabilitation Act.  Even if the Food Stamp Act generally required that people purchase food and prepare meals themselves in order to qualify as a separate household, where a disability prevents a person such as Ms. Carter from doing her own separate purchasing and food preparation, the reasonable accommodation of having someone living with her do both for her would be exceedingly modest.

22. Defendants violated the Americans with Disabilities Act by denying Catherine Carter the benefit and service of separate food stamp household status, solely because her disability prevents her from purchasing and preparing her meals herself.  Even if the Food Stamp Act generally required that people purchase food and prepare meals themselves in order to qualify as a separate household, where a disability prevents a person such as Ms. Carter from doing her own separate purchasing and food preparation, the reasonable accommodation of having someone living with her do both for her would be exceedingly modest.

23. Defendants' interpretation of food stamp law would cause it to violate the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and the Due Process Clause of the Fifth Amendment by granting separate food stamp household status to people who are capable of purchasing food and preparing it separately and do the purchasing and preparing themselves and denying it to those who are prevented by an impairment from purchasing and preparing their own food, but who do ensure that it is purchased and prepared separately.

24. Defendants' interpretation of food stamp law would also cause it to violate the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and the Due Process Clause of the Fifth Amendment by affording a special accommodation to people over the age of 60 whose disability prevents them from purchasing and preparing their own food, but not affording any accommodation whatsoever to people under 60 who are similarly prevented from purchasing and preparing their own food.  Since both groups have the same inability to purchase and prepare food separately, there is no rational basis for this disparate treatment.

25.  Plaintiff Catherine Carter has made no other application for the relief sought by this complaint.

26.  Plaintiff Catherine Carter has no adequate remedy at law.  Unless enjoined by this Court, defendants will continue to deny her the right to participate in the food stamp program as a separate household.

WHEREFORE, plaintiff respectfully prays that this Honorable Court grant the following relief:

a. Enjoin defendant preliminarily and permanently from denying plaintiff the right to receive food stamps as a separate household;

b.  Pending a decision on plaintiff's request for preliminary injunctive relief, issue a temporary restraining order allowing plaintiff to receive food stamps as a separate household;

c.  Declare that the Food Stamp Act requires defendants to afford separate household status to plaintiff and all others whose food is purchased and prepared separately, but whose disability prevents them from purchasing and preparing food themselves;

    d.   Declare that the Americans with Disabilities Act and section 504 of the Rehabilitation Act require defendants to afford plaintiff and all others whose disability prevents them from purchasing and preparing food themselves;

    e.   Restore the food stamp benefits to Catherine Carter retroactive to the date on which she applied to receive food stamps as a separate household.; and

    f.   Grant such other further and different relief as the Court may deem just and proper.

Respectfully submitted,

  /s/ Lawrence F. Gardella
LAWRENCE F. GARDELLA  GAR028
Legal Services Alabama
207 Montgomery Street, Suite 1200
Montgomery, AL  36104
(334)  832-1427
Fax: (334) 264-1474

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this day, April 10, 2006, I have served the above and foregoing pleading upon defendants by placing copies of same in the U.S. Mail, postage prepaid, properly addressed as follows:

Page Walley, Commissioner
Alabama Dep't of Human Resources
50 N. Ripley Street
Montgomery, AL 36130

Mike Johanns, Secretary
U.S. Dep't of Agriculture
1400 Independence Ave., SW
Washington, DC 20250

James E. Long, Legal Office
Alabama Dep't of Human Resources

Alberto R. Gonzales, Attorney General
U.S. Dep't of Justice

50 N. Ripley Street
Montgomery, AL 36130

950 Pennsylvania Ave., NW
Washington, DC 20530-0001

Leura Garrett Canary, US Attorney
One Court Square, Suite 201
Montgomery, AL 36104

   /s/ Lawrence F. Gardella
LAWRENCE F. GARDELLA